ORDER
GRITT, JUDGE:
An application of the claimant, Vickie A. Henderson, for an award under the West Virginia Crime Victims Compensation Act, was filed August 20, 1996. The report bf the Claim Investigator, filed July 9,1997, recommended that no award be granted, to which the claimant timely objected. An Order was issued on February 17, 1998, confirming the Investigator's recommendation, in response to which the claimant's request for hearing was filed March 11, 1998. This matter came on for hearing February 21,2002, the claimant appearing in person and the State of West Virginia by counsel, Joy M. Boiling, Assistant Attorney General.
On or about August 21,1994, the claimant's 26-year-old husband, William Sean Henderson, was brutally beaten to death by J .D. Lambert and Tracey Frazier in Harrisville, Ritchie County. Both offenders were indicted for murder and malicious wounding. J.D. Lambert was convicted of involuntary manslaughter and served one year in the Ritchie County Jail. Jodie Frazier was not convicted of any crimes.
In the early morning hours of August 21, 1994, the claimant's husband, William Sean Henderson, and his friend Donald Henline, were at the Henderson's *402 home in Harrisville talking and drinking beer. Vickie Henderson testified that she had been talking to her husband and Mr .Henline. Mrs. Henderson decided to go to bed while Mr .Henderson and Mr .Henline stayed up talking. Later that night, Richard Hall stopped by the Henderson's residence. Mr .Hall was a friend of Mr .Henderson's. Mr .Henline described Mr .Hall as an acquaintance. Mr .Hall had just returned from a party at a nearby apartment on W. Main Street in Harrisville, where he had attempted to speak to his girlfriend. Mr. Hall informed Mr.
Henderson and Mr. Henline that he tried to speak to his girlfriend, with whom he was having a disagreement, but that he was unable to do so (Transcript, page I 6). He informed them that he had an argument with two men at the party and decided to leave (Transcript, page 16). Mr. Hall asked Mr. Henline and Mr. Henderson if they would go with him to this party so that he could speak to his girlfriend (Transcript, page 16). Both Mr. Henline and Mr. Henderson agreed to do so. Mr. Henline admitted that he was a little concerned about going. He was also curious as to Mr .Hall's need for them to accompany him at this time (Transcript, page 22). However, he testified that neither he nor Mr. Henderson thought at that time that anything bad would happen (Transcript, page 21).
The party was close to the Henderson's residence and the weather was nice so they all decided to walk. Once they reached the street corner opposite the apartment, Mr . Henline recalls observing a few men walk down from the second floor balcony of the apartment to the street (Transcript, page 18). At this point, Mr. Henderson, Mr. Henline, and'Mr. Hall split up and went in different directions. Mr. Hall was looking for his girlfriend. Mr. Henline recalls seeing J.D. Lambert walk outside the apartment to the street comer where Mr. Henderson was standing (Transcript, page 24). At first, it did not appear to Mr. Henline that there was going to be any conflict between Mr. Henderson and J.D. Lambert. Although he could not hear their conversation, he could see every move they made and he watched them the entire time he was there (Transcript, page 28). Mr. Henline testified that Mr. Henderson handed J.D. Lambert a cigarette. Then, it appeared that the two men were going to shake hands, when suddenly J.D. Lambert punched Mr. Henderson in the face a couple times and threw him violently to the pavement (Transcript, page 27). J.D. Lambert then started kicking Mr. Henderson while he was lying helplessly on the ground (Transcript, page 27). At this time, Tracey Frazier started kicking him in the back and ribs (Transcript, pages 27-28).
Eventually, the two assailants briefly stopped their savage attack and left Mr. Henderson lying in the street. Mr .Henline testified that he walked over to Mr. Henderson, who told him that he was badly hurt and needed help (Transcript, page *403 17). Mr .Henline went back to the Henderson's residence to get his truck so he could take Mr. Henderson to the hospital. It was apparently during this brief time period that J.D. Lambert ran back to where the victim was lying and jumped and stomped on his chest and abdomen with all his weight (Transcript, page 18). It was this savage act of jumping and stomping on Mr .Henderson's chest and abdomen that caused lacerations to his liver, which the autopsy report listed as the cause of death.
Although Mrs. Henderson was not present when this incident occurred, she was able to testify as tp her husband's personality and disposition. She admitted that her husband had a few drinks on the night at issue before she went to bed, but she could not testify as to how many drinks he had after she went to bed (Transcript, page 7). She stated that Mr. Henderson did not have a criminal record nor did he have a bad temper or a propensity to fight (Transcript, page 12). She stated that even though his blood alcohol level was .16 %, she did not believe that his judgment was impaired. In her opinion, she did not believe that the alcohol played a role in his decision to go with Mr. Hall to this party (Transcript, page 12). She testified that Mr. Henderson would have gone with Mr. Hall even if he had not been drinking alcohol. According to Mrs. Henderson, her husband was the type of person who liked to help other people (Transcript page 12). Given the fact that he liked to help people in need, it was her opinion that her husband was trying to help Mr .Hall who was his friend. Mrs. Henderson testified that she was confident that all her husband wanted to do was to help Mr. Hall find and speak to his girlfriend and resolve the situation peacefully without any trouble or fighting.
Donald L. Henline testified that he had been a close friend of Mr .Henderson's for approximately three or four years. Mr .Henline worked with Mr. Henderson and stated that he was easy to get along with and always seemed happy. He stated that Mr. Henderson always seemed to be in a good mood and tried to make other people laugh. Mr .Henline also agreed that Mr .Henderson was the type of person who liked to help other people and would go out of his way to do so (Transcript, page 19). Mr. Henline testified that on the night of this incident, Mr. Henderson was in his normal good mood and in no way acted as though he was wanting to fight.
This Court's initial denial was based on the alleged contributory misconduct of the victim, William Sean Henderson. The police report indicated that the victim may have initiated the fight by shoving Tracey Frazier. The report also indicated that the victim was intoxicated with a blood alcohol level of .16%. Based upon this information, the Claim Investigator recommended that the claim *404 be denied, and the Court agreed. However, after a careful review of the record and the evidence adduced at the hearing, the Court finds that the claimant was indeed the innocent victim of criminally injurious conduct. The Court further finds that a reduced award is warranted.
W. Va. Code §14-2A-3(1) defines "Contributory misconduct" as: "any conduct of the claimant, or the victim thrdugh whom the claimant claims an award, that is unlawful or intentionally tortious and that, without regard to the conduct's proximity in time or space to the criminally injurious conduct has casual relationship to the criminally injurious conduct that is the basis of the claim and shall also include the voluntary intoxication of the claimant, either by the consumption of alcohol or the use of any controlled substance when the intoxication has a casual connection or relationship to the injury sustained."
Furthermore, W. Va. Code § 14-2A-14 provides the Court with the discretion to modify an award based upon the contributory misconduct of the claimant or of the victim through whom a claim is made. When a victim's actions fall without the express wording of contributory misconduct as defined in W. Va. Code § 14-2A-3(1), the Court will then look to the purpose and intent of the Act. The Act established a system of compensation for innocent citizens who are victims of crime. While misconduct includes unlawful conduct as a matter of law, "misconduct" may be something less than unlawful conduct, though more than an act in poor taste. Misconduct requires some deviation from the accepted norm or standard of proper behavior. Conduct may be construed as "'contributory misconduct" if an ordinary prudent person could have reasonably foreseen that such a result, or consequences of a generally injurious nature, was probable under all the facts as they existed. In re Trador, CV-97-56 (1997). Furthermore, the proximate cause does not require that the claimant should have been able to foresee the injury in the precise manner in which it actually occurred, but only that consequences of a generally injurious nature were probable under all the facts.
In this claim, it is evident that the victim, William S. Henderson did not commit any unlawful or tortious acts. The evidence adduced at the hearing established that Mr . Henderson was not the aggressor in this incident and did not do anything whatsoever to provoke this savage attack. However, Mr. Henderson's decision to go with Mr. Hall to the party was not the action of a reasonably prudent person under the circumstances. A reasonable person would have looked at the totality of the circumstances surrounding Mr. Hall's request to accompany him to a party where he had just been in an argument with a couple of teenagers who were drinking. There were too many risks involved in going. In addition to the fact that *405 Mr .Hall had already been in an argument with two teenagers and was prohibited from speaking to his girlfriend, there was a large crowd of teenagers that were drinking and probably drunk. It was very late at night and the victim did not know any of the people at the party .Although Mr . Henderson by all accounts was a kind, helpful, and decent person, he did have a lot to drink on the night of this ■incident. The Court cannot ignore this fact. It is very possible that had Mr . Henderson not had so much alcohol he may have decided to stay home that night, which would have been the reasonable and prudent course of conduct under these circumstances.
In view of the foregoing, the Court is of the opinion to and does hereby make an award of $15,000.00, which represents fifty percent of the total amount requested by Mrs. Henderson, as set forth in the Investigator's memorandum dated June 28,2002.